**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

JACKIE ROBINSON,

                                  Plaintiff,

                 vs.

MIRIAM JOYA, MARIA ZAVALA, Hospital
Police Officer DUVALL, Hospital Police
Officer Ofelia Corona, COALINGA STATE
HOSPITAL, CALIFORNIA DEPARTMENT
OF MENTAL HEALTH,

                                Defendants.

Civil No.     1:08-1339-JLS (BLM)

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT
PURSUANT TO Fed.R.Civ.P. 12(b)(6),
GRANTING DEFENDANTS'
SUPPLEMENTAL MOTION TO
DISMISS SECOND AMENDED
COMPLAINT, AND DENYING AS
MOOT PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
TEMPORARY RESTRAINING ORDER**

**[Doc. Nos. 18, 23, & 27]**

## I.     PROCEDURAL BACKGROUND

On September 8, 2008, Plaintiff Jackie Robinson, a Sexually Violent Predator ("SVP") and

civil detainee currently housed at Coalinga State Hospital ("CSH") and proceeding pro se, filed a

civil rights Complaint pursuant to 42 U.S.C. section 1983 [doc. no. 1]. Plaintiff did not prepay the

$350 filing fee mandated by 28 U.S.C. section 1914(a) to commence a civil action; instead, he filed

1  a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. section 1915(a) [doc. no. 2].

2  The Court granted Plaintiff's Motion to Proceed IFP on September 12, 2008 [doc. no. 4].  On

3  November 3, 2008, Plaintiff filed a First Amended Complaint ("FAC") [doc. no. 6].  On November

4  26, 2008, this matter was reassigned to Visiting District Judge Janis L. Sammartino for all further

5  proceedings [doc. no. 7].

6  On January 26, 2009, the Court issued a *sua sponte* order dismissing the First Amended

7  Complaint without prejudice pursuant to 28 U.S.C. section 1915(e)(2)(b) because it appeared from

8  the face of Plaintiff's pleading that it failed to state a claim upon which relief may be granted.  (*See*

9  doc. no. 9 at 4.)  However, Plaintiff was granted leave to file a Second Amended Complaint to

10  address the deficiencies of the pleading as noted in the dismissal order.  (*Id*. at 4-5.)

11  On March 5, 2009, Plaintiff filed a Second Amended Complaint [doc. no. 10].  On July 6,

12  2009, Defendants Miriam Joya, Maria Zavala, Jerry Duvall, Ofelia Corona, CSH, and California

13  Department of Mental Health ("DMH") filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6)

14  [doc. no. 18] and, on August 24, 2009, those same Defendants filed a Supplemental Motion to

15  Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) [doc. no. 27].  On September 17, 2009, Plaintiff filed both

16  an Objection to Defendants' Motion to Dismiss the Second Amended Complaint and an Objection to

17  Defendants' Supplemental Motion to Dismiss the Second Amended Complaint [doc. nos. 30 & 31].

18  These motions are the subject of this Order.  Pursuant to the Court's Order Setting Briefing

19  Schedule, filed on July 10, 2009 [doc. no. 21], the Court now considers the matter fully briefed and

20  hereby issues its ruling with regard to the motions without hearing or oral argument.[1]

21  **II.    ALLEGATIONS OF THE SECOND AMENDED COMPLAINT**

22  Plaintiff Jackie Robinson has been committed to CSH as an SVP pursuant to California's

23  Sexually Violent Predator Act, or Jessica's Law, since January 2007.  (SAC at 4.)  On or about May

24  22, 2007, Defendant Duvall seized Plaintiff's incoming mail, "read it cover to cover," and,

---

[1]Additionally, on July 30, 2009, Plaintiff filed a Motion for Preliminary Injunction and Temporary Restraining Order along with points and authorities and his declaration supporting the motion [doc. nos. 23-25]. On August 21, 2009, Defendants Joya, Zavala, Duvall, Corona, CSH, and the DMH filed an Opposition to Plaintiff's motion and, on September 4, 2009, Plaintiff filed a response [doc. nos. 26 & 28].

determining that the mail was Plaintiff's bank statement, attempted to make Plaintiff turn it over to the Trust Office. Plaintiff objected. (*Id.*)

On or about March 17, 2008, Plaintiff received several pieces of mail, including a Pell Grant check. (*Id.*) When Defendant Zavala, a hospital police officer, inspected Plaintiff's mail and noticed the check, Plaintiff informed Zavala that he wished to send the check home and that he had the envelope and stamp with which to do so. (SAC at 4-5.) Plaintiff further informed Zavala that CSH did not have conservatorship over him and that Plaintiff did not wish to send the check to the Trust Office. (SAC at 5.) Zavala permitted Plaintiff to place the check in the envelope, and she deposited it for him in the outgoing mail receptacle. (*Id.*) However, an hour later, Plaintiff was contacted by Defendant Joya, Acting Unit Supervisor for Plaintiff's unit, who stated "Per Coalinga's mail policy Plaintiff had to open his sealed letter and remove the check, and that he had to endorse it and send it to the Trust Office." (*Id.*) Plaintiff further alleges that according to CHS mail policy, Defendant CSH failed to maintain, store, or keep outgoing mail in a locked box or other secured repository, leaving it accessible to anyone and allowing Joy's interference with his mail. Plaintiff goes on to allege Defendant Joya held his mail in her office "form over a week." (*Id.*)[2] Plaintiff further alleges that on February 24, 2009, Defendant Ofelia Corona, a Unit Supervisor for Plaintiff's housing unit, seized and tampered with Plaintiff's mail from a financial institution, without first allowing Plaintiff to open it. (*Id.*)[3] Plaintiff has no idea what became of this mail from his financial institution.

In or about March 2007, a computer moratorium was enacted by Defendant CHS. (SAC at 8.) The moratorium put a halt to application of the computer policy contained in Administrative Directive 654, which allowed civil detainees at CSH to own and possess their own personal laptop computers. (*Id.*) Subsequently, after a review of the moratorium and on or about February 2008, Acting Executive Director Norm Kramer determined that "there would be no changes to the current

---

[2]On September 8, 2008, the California Office of Administrative Law ("COAL") determined that Defendant CSH's Administrative Directive 624, the "mail policy," was an "underground regulation." (SAC at 6; *see also* Plaintiff's Ex. 1.) This means, according to COAL, AD 624 was invalid because it failed to comply with California's Administrative Procedure Act.

[3]Plaintiff further alleges that Defendant Corona seized, tampered with, and perhaps destroyed mail from financial institutions that was addressed to other residents of CHS. (SAC at 6-7.)

computer policy." (*Id.*)  On October 8, 2008, after Kramer retired, Plaintiff appealed the computer moratorium to the new Acting Executive Director, Pam Ahlin.  Ahlin responded to Plaintiff's appeal stating "The Department of Mental Health ["DMH"] has recently established a statewide workgroup to develop an appropriate policy for application in all DMH facilities concerning the use of personal computers." (*Id.*)  Since the moratorium has been in effect (since in or about March 2007), up to 700 of 900 residents of CSH, including Plaintiff, would like to own a laptop computer but are precluded form doing so by the moratorium.  (SAC at 8-9.)

Plaintiff contends that because of his commitment as an SVP, he is entitled to "more considerate treatment" than those who are criminally detained.  (SAC at 3.)  In Count 1, Plaintiff claims that Defendant Duvall violated his First Amendment right to privacy and his Fourth Amendment right to be free from unreasonable searches and seizures when he attempted to force Plaintiff to turn over his bank statement to the Trust Office.  (SAC at 4.)  Also as part of Count 1, Plaintiff claims that Defendants Zavala and Joya violated his First Amendment right to privacy and his Fourth Amendment right to be free from unreasonable searches and seizures when they acted in concert to intentionally and illegally seize, obstruct, delay, and tamper with Plaintiff's mail.  (SAC at 5.)  In addition, Plaintiff alleges that Defendant Joya violated 18 U.S.C. sections 1702 and 1708 by depriving him of the right to correspond freely with individuals of his choosing and confiscating and holding his mail in her office for more than one week.  (SAC at 5.)

In Count 2, Plaintiff contends that Defendant CSH knowingly and willfully violated Plaintiff's First and Fourth Amendment rights by creating, enforcing, interpreting, and fostering an illegal mail policy (Administrative Directive 624) that punishes Plaintiff for receiving mail.  (SAC at 6-7.)  Additionally, Defendant CSH failed to properly train and instruct its employees, agents, or staff on proper procedures for handling incoming/outgoing U.S. mail.  (*Id.*)  Also as part of Count 2, Plaintiff claims that Defendant Corona violated his Fourth Amendment right to be free from unreasonable searches and seizures when she maliciously acted to seize, tamper with, and possibly destroy Plaintiff's mail on February 24, 2009.  (SAC at 7.)

In Count 3, Plaintiff contends that Defendant DMH has violated and continues to violate Plaintiff's, and other residents', Fourteenth Amendment rights to Equal Protection and Due Process with regard to the prolonged moratorium on Administrative Directive 654, which allows civil

1  detainees at CSH to own and possess personal laptop computers. (SAC 8-9.) Plaintiff further claims

2  that Defendant DMH has acted with deliberate indifference in failing to create, enact, or restore a

3  meaningful policy regarding the possession or use of personal laptop computers by residents of

4  CSH. (*Id.*)

5  **III.    STANDARD UNDER FED. R. CIV. P. 12(b)(6)**

6         A motion to dismiss for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil

7  Procedure, "tests the legal sufficiency of a claim," focusing on the "sufficiency" of a claim statement

8  rather than on the claim's substantive merits. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

9  Therefore, courts normally "look only at the face of the complaint to decide" the motion. *Van*

10 *Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). A Rule 12(b)(6) dismissal

11 may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts

12 alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

13 Cir. 1990).

14        "While legal conclusions can provide the framework of a complaint, they must be supported

15 by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1950 (2009). In reviewing a

16 complaint for Rule 12(b)(6) dismissal purposes, courts accept allegations of material fact as true and

17 construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*,

18 80 F.3d 336, 337-38 (9th Cir. 1996). Factual allegations asserted by *pro se* petitioners, "however

19 inartfully pleaded," are held "to less stringent standards" than formal pleadings drafted by lawyers.

20 *Haines v. Kerner*, 404 U.S. 519-20 (1972); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d

21 621, 623 (9th Cir. 1988) ("In civil rights cases where a plaintiff appears *pro se,* the court must

22 construe the pleadings liberally and must afford plaintiff the benefit of any doubt"). Nevertheless,

23 while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it

24 demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129

25 S.Ct. at 1949, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (in deciding a

26 motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual

27 allegation"); *see Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (the court need not

28 //

accept as true conclusory allegations, "unwarranted deductions," or "unreasonable inferences"), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then decide whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1250. A Rule 12(b)(6)dismissal is properly granted if a plaintiff's complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009), *citing Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, *quoting Twombly*, 550 U.S. at 557. When a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'") *quoting Twombly*, 550 U.S. at 555, 557 (a complaint is insufficient if it tenders "naked assertions" devoid of "further factual enhancement").

The Court may not itself supply missing elements in a deficient claim statement. In spite of the deference courts accord to a plaintiff's factual allegations, it is improper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Nor must the court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988 (citation omitted); *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that
//

1   content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United*

2   *States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009), *quoting Iqbal*, 129 S. Ct. at 1949.

3   **IV.     DEFENDANTS' ARGUMENTS IN SUPPORT OF DISMISSAL**

4           Defendants Miriam Joya, Maria Zavala, Jerry Duvall, Ofelia Corona, CSH, and DMH move

5   to dismiss Plaintiff's Second Amended Complaint on the following grounds:

6           1) With regard to the Pell Grant check incident on March 17, 2008, Plaintiff fails to state a

7   claim for violation of his First Amendment right to be free from interference with his mail, fails to

8   state a claim for violation of his Fourth Amendment right to be free from unreasonable searches and

9   seizures, and fails to state a claim for violation of his Fourteenth Amendment right to due process

10  because he fails to allege any injury (Defendants' Motion to Dismiss Plaintiff's Second Amended

11  Complaint [Doc. No. 18], hereafter the "Motion," at 9-14);

12          2) With regard to the incident involving inspection of his bank statement on May 22, 2007,

13  Plaintiff fails to state a claim for violation of his First Amendment right to be free from interference

14  with his mail; fails to state a claim for violation of his Fourth Amendment right to be free from

15  unreasonable searches and seizures because he had no legitimate expectation of privacy in his bank

16  statement, because he has alleged no "seizure," and because reviewing Plaintiff's bank statement

17  promoted a legitimate governmental interest; and he fails to state a claim for violation of his

18  Fourteenth Amendment rights to due process because any liberty interest in uncensored

19  communication by letter is qualified by Plaintiff's status as a civil detainee (Defendants'

20  Supplemental Motion to Dismiss his Second Amended Complaint [doc. no. 27], hereafter the

21  "Supplemental Motion," at 7-13);

22          3) With regard to the February 24, 2009 incident involving confiscation of mail from

23  Plaintiff's financial institution before Plaintiff had read it, Plaintiff fails to state a claim for violation

24  of his Fourth Amendment right to be free from unreasonable searches and seizures because, among

25  other reasons, Plaintiff does not allege that Defendant Corona read the documents or disclosed their

26  contents to others so as to implicate his right to privacy, and he fails to state a claim for violation of

27  his Fourteenth Amendment right to due process because the California Government Tort Claims Act

28  //

1   provides an adequate post-deprivation remedy for unauthorized property deprivations so as to

2   disallow a remedy under 42 U.S.C. section 1983 (Supplemental Motion at 14-17);

3          4) Plaintiff fails to state a claim for conspiracy to violate 18 U.S.C. sections 1702 and 1708

4   because there is no private right of action under these penal statutes governing criminal offenses for

5   obstruction and theft of mail (Motion at 14-15);

6          5) Plaintiff fails to state a claim for violation of his right to equal protection under the law

7   with regard to the computer moratorium because he fails to allege that he is a member of an

8   identifiable class, that he was intentionally treated differently from others similarly situated, and that

9   there was no rational basis for the difference in treatment (Supplemental Motion at 17-18);

10         6) Plaintiff fails to state a claim for violation of his right to due process with regard to the

11  computer moratorium because he fails to allege a constitutionally-protected right to possess a

12  personal computer (Supplemental Motion at 18);

13         7) Defendants CSH and the DMH should be dismissed because they are not "persons" under

14  42 U.S.C. section 1983, and the Eleventh Amendment bars suit for damages or injunctive relief

15  against the State and its agencies (Motion at 15-16);

16         8) Plaintiff's third claim (involving the computer moratorium) should be dismissed in its

17  entirety because no individuals are named in that claim, and the Eleventh Amendment bars claims

18  against the State or its agencies for injunctive relief or damages (Supplemental Motion at 19);

19         9) The damage claims against Defendants Zavala and Duvall in their official capacities

20  should be dismissed because the Eleventh Amendment bars damages actions under 42 U.S.C.

21  section 1983 against state officials in their official capacities (Motion at 16);

22         10) Plaintiff's claims for damages against the Defendants in their individual capacity are

23  barred by the doctrine of qualified immunity (Motion at 17-21; Supplemental Motion at 20-21);

24         11) Defendant Zavala should be dismissed because Plaintiff fails to allege wrongful conduct

25  on her part and because Plaintiff fails to properly allege a conspiracy claim against her (Motion at

26  22-23);

27         12) Plaintiff's allegations on behalf of third parties should be dismissed (Motion at 23);

28         13) Plaintiff's allegations of "failure to train" fail to state a claim for relief (Motion at 24);

1    14) The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law

2    underground regulation claim and, in any event, Plaintiff fails to properly state any such claim

3    (Supplemental Motion at 19-20); and

4    14) The SAC contains allegations that are vague and conclusory, and they should be

5    dismissed or stricken (Motion at 24-28).

6    **V.    DISCUSSION**

7        **A.    Plaintiff's Sexually Violent Predator Status**

8        Because Plaintiff was civilly committed at CSH as an SVP at the time of the alleged civil

9    rights violations, he is "entitled to conditions of confinement that are not punitive." *Jones v. Blanas*,

10   393 F.3d 918, 933 (9th Cir. 2004); *see also Youngberg v. Romeo*, 457 U.S. 307, 321-22

11   (1982)("[P]ersons who have been involuntarily committed are entitled to more considerate treatment

12   and conditions of confinement than criminals whose conditions of confinement are designed to

13   punish"); *see Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (pretrial detainees retain greater liberty

14   protections than individuals detained under criminal process).

15       . . . [C]ivilly detained persons must be afforded "more considerate treatment and
         conditions of confinement than criminals whose conditions of confinement are
16       designed to punish." [citations omitted]  It follows logically, then, that the rights
         afforded prisoners set a floor for those that must be afforded SVPs, and that where the
17       Defendants violate a standard that is clearly established in the prison context, the
         violation is clearly established under the SVP scheme, except where the California
18       SVP statutory scheme would give a reasonable official reason to believe that the body
         of law applicable to prisoners would not apply.

19

20   *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007).  Importantly, the *Hydrick* court acknowledged

21   ". . . it is not always clearly established *how much* more expansive the rights of civilly detained

22   persons are than those of criminally detained persons."  500 F.3d at 990.

23       In *Jones*, the Ninth Circuit stated:

24       [¶] At a bare minimum, then, an individual detained under civil process – like an
         individual accused but not convicted of a crime – cannot be subjected to conditions
25       that "amount to punishment."  *Bell*, 441 U.S. at 536, 99 S.Ct. 1861.  Following *Bell*,
         we have recognized that punitive conditions may be shown (1) where the challenged
26       restrictions are expressly intended to punish, or (2) where the challenged restrictions
         serve an alternative, non-punitive purpose but are nonetheless "excessive in relation
27       to the alternative purpose," *Demery* [*v. Arpaio*], 378 F.3d at 1028 (quoting *Bell*, 441
         U.S. at 538, 99 S.Ct. 1861) . . . or "are employed to achieve objectives that could be
28       accomplished in so many alternative and less harsh methods," *Hallstrom v. City of
         Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993) (quoting *Bell*, 441 U.S. at 539
         n.20,

99 S.Ct. 1861) . . . Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility. *Id.*

*Jones v. Blanas*, 393 F.3d at 932.

## B. First Amendment and Interference With Mail

As part of his first and second claims for relief, Plaintiff contends that his First Amendment right to be free from interference with mail was violated on three occasions: the March 17, 2008 incident (involving the Pell Grant check), the May 22, 2007 incident (involving inspection of his bank statement), and the February 24, 2009 incident (involving confiscation of mail from Plaintiff's financial institution before Plaintiff had read it). (SAC at 4-7.) Defendants contend that Plaintiff has failed to state a claim for violation of the First Amendment with respect to receipt of mail. (Motion at 9-14.)

Prisoners and civilly committed persons have a First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401 407 (1989). Restrictions on incoming mail are analyzed under the reasonableness standard set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *See also*, *Thornburgh*, 490 U.S. at 413-14. Pursuant to *Safley*, an "interference" is valid if it reasonably related to legitimate penological interests. 482 U.S. at 89. To determine the reasonableness of the regulation, the court must consider the following: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) the absence of ready alternatives." *Safley*, 482 U.S. at 89-90.

The Ninth Circuit has held that prison officials may examine a *prisoner's* communications without infringing upon his rights. *U.S. v. Wilson*, 447 F.2d 1, 8 n.4 (9th Cir. 1971). Courts have also upheld policies that call for inspection of non-legal mail for contraband. *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *Witherow v. Paff*, 52 F.3d 264 (9th Cir. 1995); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986). With regard to Plaintiff's status as a civil detainee, any restrictions on his First Amendment rights to send and receive mail must be non-punitive. *Hydrick*, 500 F.3d at 989; *Jones*, 393 F.3d at 932. In order to allege that punitive restrictions exist, a plaintiff must assert

that the challenged restrictions are expressly intended to punish, the restrictions serve a non-punitive purpose but are nonetheless excessive, or that the legitimate purpose could be accomplished with less restrictive or harsh methods. *Jones*, 393 F.3d at 932; *Bell*, 441 U.S. at 539.

### I. The March 17, 2008 incident

With regard to the March 17, 2008 incident (involving the Pell Grant check), even assuming Plaintiff intended to allege that Defendant Joya improperly held his Pell Grant check for one week, it has been held that a temporary delay does not violate an inmate's First Amendment rights. *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999)(temporary delay in the delivery of an inmate's publications, resulting from the prison official's security inspection, does not violate First Amendment rights); *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987)("merely alleging an isolated delay or some other relatively short-term, no content-based disruption in the delivery of inmate reading materials will not support, even as against a motion to dismiss, a cause of action grounded upon the First Amendment"). Other courts have also held that an isolated incident in disruption of an inmate's mail is not usually sufficient to show a constitutional violation. *Davis v. Goord*, 320 F.3d 346, 351 (2d. Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 944 (10th Cir. 1990). Even if Plaintiff's allegation that a one-week delay in receiving the check raised a cognizable First Amendment claim, Plaintiff does not allege that Joya's temporary confiscation of the Pell Grant check was punitive. Thus, he does not allege a constitutional violation. *See Hydrick*, 500 F.3d at 989; *Jones*, 393 F.3d at 932. Because Plaintiff alleges, at most, a one-week delay in the return of his Pell Grant check, he has failed to state a claim for violation of the First Amendment. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

### ii. The May 22, 2007 incident

Regarding the May 22, 2007 incident (involving inspection of his bank statement), what Plaintiff alleges amounts to a routine inspection for contraband, conducted in his presence. Plaintiff alleges no any type of censorship in conjunction with the inspection. "A prisoner's freedom from censorship under the First Amendment . . . with regard to his incoming mail is not the equivalent of freedom from inspection or perusal." *Brewer v. Wilkinson*, 3 F.3d 821 (5th Cir. 1993); *Wolff v.*

*McDonnell*, 418 U.S. 539, 576-77 (1974). While Plaintiff alleges Defendant Duvall *"attempted"* to make Plaintiff turn the bank statement over to the Trust Office (SAC at 4), he alleges no wrongful conduct which would, if true, result in a violation of the First Amendment. Specifically with regard to his status as a civil detainee, Plaintiff does not allege that the inspection of the bank statement was punitive (s*ee Hydrick*, 500 F.3d at 989; *Jones*, 393 F.3d at 932). Accordingly, he fails to state a claim for violation of the First Amendment. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

### iii.     The February 24, 2009 incident

Regarding the February 24, 2009 incident (involving confiscation of mail from Plaintiff's financial institution before Plaintiff had read it), Plaintiff again fails to state a claim for violation of his First Amendment right to receive mail. Plaintiff's allegations that Defendant Corona "refused to allow him to open inspect or read his mail," are insufficient to allege an unreasonable and punitive interference with his mail under *Safley*, 482 U.S. at 89-90. In light of Plaintiff's status as a civil detainee, his failure to allege that Corona's actions were punitive (s*ee Hydrick*, 500 F.3d at 989; *Jones*, 393 F.3d at 932) results in a failure to state a claim under the First Amendment. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

### iv.     Qualified Immunity

Even if Plaintiff had alleged conduct that violated a constitutional right regarding any of the above-referenced events, the right asserted was not "clearly established" at the time of the alleged misconduct so as to provide the defendant with proper notice. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). *Hydrick* and *Jones* are new cases, and neither address an SVP's claims or rights regarding inspection of legal mail as "punitive."' Accordingly, even if Plaintiff's allegations stated a claim (which they do not), Defendants would be entitled to a finding of qualified immunity on the claims.

### C.     Fourth Amendment and Search and Seizure of Mail

As part of his first and second claims for relief, Plaintiff contends that his Fourth Amendment right to be free from unreasonable searches and seizures was violated on three occasions: the May 22, 2007 incident (involving inspection of his bank statement), the March 17, 2008 incident

1

2 (involving the Pell Grant check), and the February 24, 2009 incident (involving confiscation of mail

3 from Plaintiff's financial institution before Plaintiff had read it). (SAC at 4-7.)

4 In *Hydrick v. Hunter*, the Ninth Circuit specifically held that the Fourth Amendment's

5 proscription against unreasonable searches and seizures "certainly extends to SVPs." 500 F.3d at

6 993. However, the Court further noted that "SVPs have been civilly committed subsequent to

7 criminal convictions and have been adjudged to pose a danger to the health and safety of others."

8 500 F.3d at 990. Thus, because "the rights afforded civilly detained persons are flexible enough to

9 take into account the circumstances of detention," 500 F.3d at 990, SVPs nevertheless remain

10 subject to

11 "[l]egitimate, non-punitive government interests" such as "maintaining jail security, and effective

12 management of [the] detention facility." *Jones v. Blanas*, 393 F.3d at 932. And because they are

13 held in a jail-like setting, "the reasonableness of a particular search ... is determined by reference to

14 ... concerns that mirror those that arise in the prison context: *e.g.*, the safety and security of guards

15 and others in the facility, order within the facility and the efficiency of the facility's operations."

16 *Hydrick*, 500 F.3d at 993 (internal quotation omitted).

17 In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court addressed the extent

18 to which prison officials can open and inspect incoming attorney-inmate mail (presumably, the

19 category of mail afforded the highest level of privacy). The Court, recognizing the state's interest in

20 checking incoming legal mail for contraband, upheld a prison regulation allowing officials to open,

21 but not read or censor, legal mail in the prisoner's presence. *Id.* at 576-77; *see also Reneer v. Sewell*,

22 975 F.2d 258 (6th Cir. 1992); *Bert v. Carlson*, 752 F. Supp. 346, 348 (C.D. Cal. 1990). In so doing,

23 the Court stated that the challenged regulation permitting prisoners to be present when the legal mail

24 was inspected was "all and perhaps even more" than the constitution required. *Wolff*, 418 U.S. at

25 577. With regard to Plaintiff's SVP civil detainee status, the Ninth Circuit has noted that a condition

26 is "'punitive' where it is intended to punish, or where it is 'excessive in relation to [its non-punitive]

27 purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative

28 and less harsh methods.'" *Jones*, 393 F.3d at 933-34 (citations omitted).

//

1    //

4          **I.      The May 22, 2007 incident**

5          Defendants contend that Plaintiff fails to state a claim for violation of his Fourth Amendment

6    right to be free from unreasonable searches and seizures with regard to the May 22, 2007 incident

7    (involving inspection of his bank statement) because he had no legitimate expectation of privacy in

8    his bank statement, because he has alleged no "seizure," and because reviewing Plaintiff's bank

9    statement promoted a legitimate governmental interest.  (Supplemental Motion at 7-11.)  Defendants

10   are correct.  Plaintiff alleges that Defendant Duvall "seized plaintiff's incoming mail [and] read it

11   cover to cover . . . ."  (SAC at 4.)  After determining the mail was a bank statement, "Defendant

12   Duvall attempted to make plaintiff turn it over to the Trust Office to which plaintiff objected."

13   (SAC at 4.)  Even if Plaintiff's allegation that Duvall's inspection of his mail raised a cognizable

14   Fourth Amendment claim, Plaintiff does not allege that any such inspection was "arbitrary,

15   retaliatory, or

16   clearly exceed[ed] the legitimate purpose of detention."  *Hydrick*, 500 F.3d at 993.  Thus, Plaintiff

17   has failed to allege a Fourth Amendment claim pertaining to the May 22, 2007 incident.

18   Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572

19   F.3d at 969.

20         **ii.      The March 17, 2008 incident**

21         Defendants contend that Plaintiff fails to state a claim for violation of his Fourth Amendment

22   right to be free from unreasonable searches and seizures with regard to the March 17, 2008 incident

23   (involving the Pell Grant check) because he fails to allege what happened to the Pell Grant check

24   after it was held in the Joya's office "for over a week."  (Supplemental Motion at 13-14.)

25   Defendants are correct.  Even if Plaintiff's allegation that Joya's seizure of the check raised a

26   cognizable Fourth Amendment claim, Plaintiff has failed to allege the seizure was unreasonable,

27   arbitrary, or retaliatory so as to be punitive under *Hydrick,* 500 F.3d at 993.  Instead, Plaintiff alleges

28   the seizure  was pursuant to CSH mail policy trust account procedures.  Thus, Plaintiff has failed to

     allege a Fourth Amendment claim pertaining to the March 17, 2008 incident.  Fed.R.Civ.P. 12(b)(6);

*Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

### iii. The February 29, 2009 incident

Defendants contend that Plaintiff fails to state a claim for violation of his Fourth Amendment right to be free from unreasonable searches and seizures with regard to the February 29, 2009 incident (involving confiscation of mail from Plaintiff's financial institution before Plaintiff had read it). (Supplemental Motion at 14-15.) Again, Defendants are correct. Even if Plaintiff's allegation that Defendant Corona's seizure of his mail raised a cognizable Fourth Amendment claim, Plaintiff does not allege that any such seizure was "arbitrary, retaliatory, or clearly exceed[ed] the legitimate purpose of detention" so as to be punitive. *Hydrick*, 500 F.3d at 993. Thus, Plaintiff has failed to allege a Fourth Amendment claim pertaining to the February 29, 2009 incident. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

### iv. Qualified Immunity

Even if Plaintiff had alleged conduct that violated a constitutional right regarding any of the above-referenced events, the rights asserted were not "clearly established" at the time of the alleged misconduct so as to provide the defendant with proper notice. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). *Hydrick* and *Jones* are new cases, and neither addresses an SVP's claims or rights regarding inspection of legal mail as "punitive." Accordingly, even if Plaintiff's allegations stated a claim (which they do not), Defendants would be entitled to a finding of qualified immunity on the claims.

### D. Due Process and Interference with Mail

The Due Process Clause of the Fourteenth Amendment protects persons from the deprivation of their life, liberty and property without due process of law, and has both procedural and substantive components. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Plaintiff is unable to demonstrate a due process violation unless he can identify "a liberty or property interest protected by the constitution" of which he was deprived. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000).

Defendants contend that Plaintiff fails to state a claim for violation of his substantive Fourteenth Amendment rights with regard to the May 22, 2007 incident (involving inspection of his

1    bank statement) because the incident did not involve a fundamental right and because any liberty

2    interest in uncensored communication by letter is qualified by Plaintiff's status as a civil detainee.

3    (Supplemental Motion at 11-13.)  Defendants are correct.  Plaintiff is unable to demonstrate either a

4    liberty or property interest in uncensored communication by letter arising directly under the

6    Fourteenth Amendment.  *Wright*, 219 F.3d at 913.  Thus, Plaintiff has failed to allege a Fourteenth

7    Amendment substantive due process claim pertaining to the May 22, 2007 incident.  Fed.R.Civ.P.

8    12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

9          Next, Defendants contend that Plaintiff fails to state a claim for violation of his Fourteenth

10   Amendment right to procedural due process with regard to the February 24, 2009 incident (involving

11   confiscation of mail from Plaintiff's financial institution before Plaintiff had read it) because the

12   California Government Tort Claims Act ("CTCA") provides an adequate post-deprivation remedy

13   for unauthorized property deprivations so as to disallow a remedy under 42 U.S.C. section 1983.

14   (Supplemental Motion at 15-17.)  Again, Defendants are correct.  To the extent that Plaintiff is

15   attempting to bring a Fourteenth Amendment due process claim relating to the unauthorized

16   deprivation of his property, such a claim will not state a federal cause of action under section 1983 if

17   the plaintiff has an adequate post-deprivation state remedy.  *See Hudson v. Palmer*, 468 U.S. 517,

18   533 (1984).  The CTCA provides an adequate post-deprivation state remedy for the random and

19   unauthorized taking of property.  *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994).  Here,

20   Plaintiff fails to allege compliance with the claim presentation requirements of the CTCA.  *See*

21   *Karim-Panahi,* 839 F.2d at 627.  Thus, Plaintiff has failed to allege a Fourteenth Amendment

22   procedural due process claim pertaining to the February 29, 2009 incident.  Fed.R.Civ.P. 12(b)(6);

23   *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

24          **E.       Due Process and Allegation Regarding the Computer Moratorium**

25          Defendants contend that Plaintiff fails to state a claim for violation of his right to substantive

26   due process with regard to the computer moratorium because he fails to allege a constitutionally-

27   protected right to possess a personal computer (Supplemental Motion at 18).  As set out above,

28   Plaintiff is unable to demonstrate a Fourteenth Amendment due process violation unless he can

     identify "a liberty or property interest protected by the constitution" of which he was deprived.

*Wright*, 219 F.3d at 913. Due process rights to life, liberty or property can arise directly from the Constitution or can be created by state law. Here, Plaintiff alleges no constitutional right to possess a

personal computer at CSH and alleges no state-created right to which due process attaches. Thus, Plaintiff has failed to allege a Fourteenth Amendment substantive due process claim pertaining to the computer moratorium. Fed. R. Civ. P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

### F.    Conspiracy Claim under 18 U.S.C. §§ 1702 and 1708

Defendants contend that Plaintiff fails to state a claim for conspiracy to violate 18 U.S.C. sections 1702 and 1708 because there is no private right of action under these penal statutes governing criminal offenses for obstruction and theft of mail. (Motion at 14-15.) Defendants are correct. Title 18 U.S.C. sections 1702 and 1708 are penal statutes governing criminal offenses, and there is no private right of action under these criminal statutes. *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328 (9th Cir. 1987); *Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97 (2d Cir. 1981). Thus, Plaintiff cannot allege a claim for conspiracy to violate federal criminal statutes. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

### G.    Equal Protection and Allegations Regarding the Computer Moratorium

Defendants contend that Plaintiff fails to state a claim for violation of his right to equal protection under the law with regard to the computer moratorium because he fails to allege that he is a member of an identifiable class, that he was intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment. (Supplemental Motion at 17-18.) "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citations omitted). To assert a valid equal protection claim, Plaintiff must allege: (1) he is a member of an identifiable class; (2) sufficient facts to show Defendants treated him differently from other similarly situated persons; and (3) Defendants acted

with an intent or purpose to discriminate against him based on his membership in the identifiable class. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).

As part of Count 3 (SAC at 8-9), Plaintiff alleges that, in or about March 2007, Defendant CSH enacted a computer moratorium with regard to Administrative Directive 654, which allows civil detainees to own and possess personal computers. Plaintiff alleges that, on October 8, 2008, Plaintiff appealed the moratorium to the CSH's Acting Executive Director, Pam Ahlin, who is not a named defendant in this action. Plaintiff further alleges that Ms. Ahlin informed Plaintiff that "The Department of Mental Health ["DMH"] has recently established a statewide workgroup to develop an appropriate policy for application in all DMH facilitites concerning the use of personal computers." (SAC at 8.) At of the time of the filing of the SAC, no decision had been made regarding the personal computer policy at Defendant CSH. The result of the disparate treatment, as alleged by Plaintiff, is that 700 of 900 SVPs civilly committed at CSH are being denied the right to own a personal computer, while 200 are allowed to own a personal computer. (SAC at 8-9.)

Plaintiff alleges that he is a member of a class of SVPs; however, "[a]n equal protection claim will not lie by "conflating all persons not injured into a preferred class receiving better treatment' than the plaintiff." *Thornton v. City of St Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (internal citation omitted). In addition,

> Although "[a] successful equal protection claim may be brought by a 'class of one,'" the plaintiff still bears the burden or proving that []he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th cir. 2002).

*Thornton*, 425 F.3d at 1167. So, while Plaintiff does allege he is a member of an identifiable class, and alleges Defendants treated him differently from other similarly situated persons, he does *not* allege

Defendants acted with an intent or purpose to discriminate against him based on his membership in the class, nor does he allege that no rational basis existed for such disparate treatment. *Flores*, 324 F.3d at 1134; *Thornton*, 425 F.3d at 1167. Thus, Plaintiff has failed to properly allege an Equal

1  Protection claim pertaining to the computer moratorium. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at

2  1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.[4]

3  **H.    Allegations Against Defendant Zavala and Allegations of Conspiracy**

4  As part of Claim 1 (SAC at 4-5), Plaintiff alleges that Defendant Zavala acted in concert with

5  Defendant Joya to delay, obstruct and deprive Plaintiff of his constitutional right to send and receive

6  mail under the First Amendment. However, Plaintiff alleges no wrongdoing against Defendant

7  Zavala and, instead, alleges that she allowed Plaintiff to place his Pell Grant check in an envelope

8  addressed to his home and place it in the mail receptacle.

9  Defendant Zavala contends she should be dismissed because Plaintiff fails to allege wrongful

10 conduct on her part and because Plaintiff fails to properly allege a conspiracy claim against her.

11 (Motion at 22-23.) Defendant is correct. To allege a claim of conspiracy under section 1983,

12 Plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the

13 minds to violate Plaintiff's constitutional rights. *Margolis v. Ryan*, 140 F.3d 850, 853 (9th

14 Cir.1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir.1989). "Vague and

15 conclusory allegations of official participation in civil rights violations are not sufficient to

16 withstand a motion to dismiss." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir.1982); *Aldabe v.

17 Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980) (conclusory allegations of conspiracy insufficient to

18 support a claim under section 1983). Here, Plaintiff has failed to allege any facts which show an

19 agreement or meeting of the minds between Defendants Zavalla and Joya to violate any of Plaintiff's

20 constitutional rights. *Woodrum*, 866 F.2d at 1126; *Aldabe*, 616 F.2d at 1092. Because plaintiff

21 alleges no wrongful conduct against Defendant Zavala, he fails to allege a conspiracy claim against

22 her and Defendant Joya. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at

23 555-57, 570; *Moss*, 572 F.3d at 969.

24 **I.    Allegations on Behalf of Third Parties**

25 Plaintiff alleges that Defendant Corona "illegally seized plaintiff's mail as well as several

26 other residents' mail coming from their respective financial institutions . . . ." (SAC at 6.)

27 _____

28     [4] With regard to Defendants CSH's and DMH's claim that they are immune, under the Eleventh Amendment, from a claim for injunctive relief, the Eleventh Amendment does not bar a claim for injunctive relief against state entities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989); *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir.1989) (internal quotations omitted).

Additionally, Plaintiff attaches to the Second Amended Complaint declarations from two other detainees who claim that their mail was tampered with. (SAC, Declarations of Julio Palomino and Cornelius Boyle.) Defendants contend that Plaintiff's allegations on behalf of third parties should be dismissed. (Motion at 23.) Defendants are correct. Plaintiff has no standing to sue on behalf of third parties. Pro se litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions and other documents on behalf of other prisoners. *See Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir.1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself.'" (*quoting Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)). "Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him." *Id.* (citations omitted); *see also* Fed.R.Civ.P. 11(a) ("[I]f the party is not represented by an attorney, [every written motion and other paper] shall be signed by the party."). Thus, Plaintiff fails to allege a proper claim on behalf of third parties. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

### J.    Allegations of "Failure to Train"

As part of Claim 2 (SAC at 6), Plaintiff alleges "Defendant [CHS] has failed to train and properly instruct its employees, agents and or staff on the proper procedures for handling incoming/outgoing U.S. mail." Defendants contend that Plaintiff's allegations of "failure to train" fail to state a claim for relief. (Motion at 24.) Defendants are correct. There is no *respondeat superior* liability under 42 U.S.C. section 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (the supervisor of someone who allegedly violated a plaintiff's constitutional rights is not made liable for the violation by virtue of that role). Rather, a supervisor is liable in his or her individual capacity for constitutional violations of a subordinate only "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Iqbal*, 129 S.Ct at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Consequently, absent factual allegations of direct participation by the named state actor, no cognizable constitutional claim is stated. *Taylor*, 880 F.2d at 1045. Plaintiff's "failure to

1    train" allegations appear to the Court to be an attempt by Plaintiff to "get around" the prohibition on

2    *respondeat superior* liability. Thus, Plaintiff fails to allege a claim for failure to train under 42

3    U.S.C. section 1983. Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 555-

4    57, 570; *Moss*, 572 F.3d at 969.

5         **K.    State Law Claim**

6         Defendants contend that the Court should decline to exercise supplemental jurisdiction over

7    Plaintiff's state law "underground regulation claim," that Defendant CSH's mail and package

8    procedures for individuals (as embodied in Administrative Directive 624) were not properly adopted

9    as a regulation under the state Administrative Procedures Act. (SAC at 6-7 and Exhibit 1.) In any

10   event, Defendants argue, Plaintiff fails to properly state any such claim. (Supplemental Motion at

11   19-20.) The Court agrees that Plaintiff's "underground regulation claim" should not proceed as a

12   separate state claim. Plaintiff suggests that Administrative Directive 624 is invalid, but he does not

13   identify any state law tort or any other basis that would support considering the allegation as a state

14   claim separate and apart from the federal claims alleged. Thus, Plaintiff fails to allege a separate

15   state law claim regarding the "underground regulation." Fed.R.Civ.P. 12(b)(6); *Iqbal*, 129 S.Ct. at

16   1949-50; *Twombly*, 550 U.S. at 555-57, 570; *Moss*, 572 F.3d at 969.

17   **IV.    CONCLUSION AND ORDER**

18        Based on the foregoing, Defendants' Motion to Dismiss the Second Amended Complaint

19   [Doc. No. 18 ] and Defendants' Supplemental Motion to Dismiss the Second Amended Complaint

20   [Doc. No. 27] are hereby:

21        1)    **GRANTED** with leave to amend only as to Plaintiff's Equal Protection claim against

22              Defendants CSH and DMH regarding the computer moratorium (SAC, Count 3, pp.

23              8-9). Plaintiff shall file a Third Amended Complaint in compliance with the Court's

24              rulings set out above within 30 days from the date this Order is stamped "Filed"

25              pursuant to Fed.R.Civ.P. 12(a)(4)(A).; and

26        2)    **GRANTED** without leave to amend as to all other claims and Defendants.

27        3)    Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order [Doc.

28              No. 23] is hereby **DENIED AS MOOT**.

**IT IS SO ORDERED.**

DATED: March 8, 2010

Honorable Janis L. Sammartino
United States District Judge